**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2308
_____

J. R. B.; LEE ANN BOYER, Mother,

Appellants

v.

QUAKERTOWN COMMUNITY SCHOOL DISTRICT;
CARRIE STAFFIERI, Supervisor of Special ED;
DARCI GREGER, Supervisor ED Teacher;
ORATHIA BRADLEY, Principal
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:23-cv-00373)
District Judge:  Honorable Gerald A. McHugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2025

Before: SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed April 28, 2025)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lee Ann Boyer filed a pro se lawsuit in the District Court on behalf of herself and her son, J.B., relating to "trial" removals of J.B. from his kindergarten classroom in the Quakertown School District ("Quakertown") in 2020.[1] In her initial complaint, she claimed, on behalf of herself and her son, that J.B. had been deprived of a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), that the Pennsylvania Department of Education's administrative ruling to the contrary was wrong, and that his civil rights were violated. The defendants, Quakertown and three Quakertown educators, filed a motion to dismiss the complaint, which the District Court granted in part and denied in part. The District Court concluded that Boyer and J.B. had stated an IDEA claim but dismissed it against the individual defendants because IDEA does not provide a private right of action against individual defendants. The District Court also dismissed the broad claim of a civil rights violation without prejudice to repleading a more specific cause of action. In an amendment, Boyer discussed the IDEA claim and specified that that the "trial" removals violated J.B.'s rights under the Fourth Amendment, the Americans with Disabilities Act, and Pennsylvania state law.

---

[1] As we write primarily for the parties, who are familiar with the facts, we will discuss the details as they become necessary to the analysis. It suffices to say here that after J.B. engaged in multiple episodes of aggressive behavior in his kindergarten classroom, Quakertown contacted Boyer for permission to conduct a new behavioral assessment and to evaluate him for additional services beyond what was already provided through his individualized education plan ("IEP"). At that time, school staff decided, without formally notifying J.B.'s parents, to conduct a "trial" in which J.B. would spend more time working one-on-one with a behavioral support specialist in "less stimulating environments," namely in an emotional support classroom, a conference room, a hallway inside the main office, and a room that Quakertown called the "serenity space."

After discovery, Quakertown moved for summary judgment. The District Court granted the motion, rejecting the challenge to the administrative ruling and concluding that Quakertown did not deny J.B. a FAPE. The District Court also rejected the other claims on the merits. The District Court concluded that 1) no reasonable jury could find that J.B. had been seized in violation of the Fourth Amendment or discriminated against on the basis of a disability and 2) two cited Pennsylvania statutes did not apply. Boyer filed a notice of appeal on behalf of herself and her son.[2]

We have jurisdiction under 28 U.S.C. § 1291. But, for reasons that we explain below, we do not exercise review over any of the issues that Boyer raises on behalf of her son. See Osei-Afriyie, 937 F.2d at 882. We review Boyer's challenge to the District Court's ruling on summary judgment as it relates to her own rights under the IDEA.[3] See Winkelman ex. rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007); see also Chambers ex rel. Chambers v. Sch. Dist. of Phila., 587 F.3d 176, 183 (3d Cir. 2009) ("Under Winkelman, therefore, parents undoubtedly have substantive rights under the

---

[2] Boyer, who is not a lawyer, was notified that she cannot represent her son on appeal and that the appeal would only proceed as to her unless counsel appeared to represent her son. See 3d Cir. Doc. No. 5 (citing Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 883 (3d Cir. 1991)). She subsequently filed her brief, in which she advances her and J.B.'s claims in objecting to the District Court's summary-judgment ruling. She later filed, and we denied, a motion for appointment of counsel for her son, or, in the alternative, permission to represent him.

[3] Boyer does not raise, so we do not review, a challenge to the District Court's earlier ruling on the motion to dismiss. See M.S. ex. rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020).

IDEA that they may enforce by prosecuting claims brought under that statute on their own behalf."). In reviewing the District Court's ruling, we are mindful of the due weight the District Court had to afford the administrative ruling, including its obligation to consider any administrative fact-finding prima facie correct. See Abigail P. ex rel. Sarah F. v. Old Forge Sch. Dist., 105 F.4th 57, 63 (3d Cir. 2024). "Within the confines of this 'modified *de novo* review,'" our review of the District Court's relevant legal conclusions is plenary, and we review its related factual findings for clear error.[4] Id. (citation omitted).

Upon review, we will affirm the District Court's ruling in favor of Quakertown on Boyer's IDEA claim. As the District Court concluded, the record supports the administrative ruling that Quakertown did not deny J.B. a FAPE despite its procedural violations of the IDEA's requirements.[5] While "it is important that a school district comply with the IDEA's procedural requirements, compliance is not a goal in itself; rather, compliance with such procedural requirements is important because of the

---

[4] Overall, the District Court accurately presented the facts. But, as Boyer contends and the Appellees concede, the District Court made some mistakes in describing some non-material facts. For example, District Court once stated that the "trial" started in September not October, and that J.B. withdrew from the school to be home-schooled, as he later was, not because he moved out of the school district. However, any errors were harmless.

[5] The hearing officer identified the following three procedural violations: (1) Quakertown did not provide prior written notice about the "trial"; (2) Quakertown did not convene an IEP meeting to discuss the suggested modifications to the trial; and (3) Quakertown did not seek meaningful parental input before and during all phases of the trial.

requirements' impact on students' and parents' substantive rights." Ridley Sch. Dist. v. M.R., 680 F.3d 260, 274 (3d Cir. 2012) (cleaned up). "A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010). As the District Court ruled, the record supports the hearing officer's conclusion that none of those things happened.

As the District Court explained, the "trial" was relatively short. Insomuch as J.B. was given additional one-on-one instruction and time with an emotional support teacher, the "trial" provided him with services beyond what was available his regular classroom. Boyer argues that the alternative learning environments chosen were more restrictive than necessary, but J.B. had engaged in behavior unacceptable in the regular classroom, and an initial trial of short stays in the emotional support classroom did not eliminate that behavior. Furthermore, J.B.'s removal from the regular classroom was not inconsistent with a recommendation from his pre-kindergarten functional behavior assessment, specifically that he go to less stimulating environments to assist with emotional regulation. While Quakertown did not formally notify J.B.'s parents before beginning the "trial," Boyer was not seriously deprived of her participation rights under the circumstances of this case. The emotional support teacher described what was going on to Boyer four days after its start (albeit in response to Boyer's request for information). At that time, Boyer seemed to accept and approve of how J.B. was being instructed. Within the next couple of weeks, Boyer was in communication with the teacher,

5

expressing her concerns about the "less stimulating environments" in some messages and seemingly agreeing with the means and goals of the "trial" in others. Within three weeks, Quakertown formally notified Boyer about the trial at an IEP meeting and Boyer agreed then that the "trial" could continue.[6] When Boyer continued to express concerns after the IEP meeting, Quakertown immediately proposed an additional meeting so that J.B.'s parents could express their concerns and help determine the best way to meet J.B.'s needs going forward. At the follow-up meeting several weeks later,[7] with Boyer, Quakertown's IEP team, and counsel for the parties, Quakertown confirmed that J.B. had been permitted to choose where he preferred to work during the school day after Boyer raised her additional concerns. And everyone agreed that his choosing was an appropriate approach and that the schedule that he settled on should be continued.

Accordingly, to the extent that this appeal raises a challenge to the District Court's ruling on Boyer's IDEA claim, we will affirm the judgment. As for the other claims, which were J.B.'s, not Boyer's, we must vacate the District Court's judgment because Boyer, who is not a lawyer, was not entitled to represent J.B. in federal court. See Osei-Afriyie, 937 F.2d at 883.[8] Because we will vacate the judgment, we do not consider whether, as Boyer argues, the District Court did not consider all the state statutes that

---

[6] Boyer has argued that she was not given the full details of the "trial" at the meeting nor earlier.

[7] Boyer admitted that it was her schedule that delayed the follow-up meeting.

[8] As in Osei, we do not view this issue forfeited even though it was not raised in the District Court. See Osei-Afriyie, 937 F.2d at 883.

Boyer listed or otherwise erred in considering the claims raised on J.B.'s behalf in the complaint.

On remand, the options are the same as those we set forth in Osei-Afriyie. See 937 F.2d at 883. Boyer may obtain counsel for J.B. and proceed though counsel. If Boyer does not pursue the claims that way, J.B.'s claims may be dismissed without prejudice, to accrue for purposes of the relevant statutes of limitations when J.B. reaches 18 years old (or sooner, if he becomes an emancipated minor). Additionally, the District Court is free to consider appointment of counsel under 28 U.S.C. § 1915(e) by considering J.B.'s financial eligibility and weighing any potential merit that it sees in J.B.'s claims, J.B.'s ability to secure counsel, and any prejudice he would suffer by waiting to bring his claims. We express no opinion on the merits of J.B.'s claims, and we are not suggesting that the District Court should appoint counsel. We merely set out the options for the District Court to choose among on remand.

For these reasons, we will affirm in part and vacate in part the judgment. This matter will be remanded for further proceedings consistent with this opinion.